**THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **LATOYA JAMERSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CINTAS CORPORATION**,<br><br>Defendant. | Case No.:<br><br>Hon.: |

**SECTION 216(b) AND CLASS ACTION COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Latoya Jamerson, by and through her undersigned counsel, who hereby brings this Section 216(b) and Class Action Complaint against Defendant, Cintas Corporation, and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and common law.

2. Defendant is a business facilities and employee products and services provider working with "over one million businesses worldwide."[1]

3. In supporting its large customer base Defendant employs hourly call center employees with job titles that include, but are not limited to, Accounts Receivable Representative, Sales Representative and Service Representative (collectively referred to as Customer Service

[1] https://www.linkedin.com/company/cintas/ (last visited March 27, 2026).

Representatives, or "CSRs"), in its brick-and-mortar offices as well as in remote call center settings across the United States.

4. Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5. Regardless of the specific job title, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing call center based assistance to Defendant's existing and prospective customers.

6. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and Defendant's CSRs, are homogenous, and it issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call-ready activities. [2] ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

7. Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and during their scheduled shifts, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked and in workweeks in which CSRs worked

[2] DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers

overtime, for straight time.

8. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to the start of their scheduled shifts and when returning from their meal periods.

9. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees, and costs, along with all other relief to which they are entitled. Plaintiff further seeks such remedies to make the workers whole for the harm they suffered and to ensure that Defendant does not subject future employees to the same unlawful practices.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under the FLSA, 29 U.S.C. §§ 201, *et seq*.

11. Additionally, this Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

13. Defendant's employees, including Plaintiff, engage in interstate commerce – including, but not limited to utilizing telephone lines and internet – and therefore, they are also covered by the FLSA on an individual basis.

14. This Court has personal jurisdiction over Defendant because Defendant conduct business within this District and maintains its principal place of business in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business and employs CSRs in this District.

**PARTIES**

16. Plaintiff is a resident of Houston, Texas.

17. Plaintiff worked for Defendant as an Accounts Receivable Representative in a hybrid role out of one of its Houston, Texas office locations from approximately August 2022 to November 2024.

18. Plaintiff's most recent hourly rate was approximately $22.15

19. Plaintiff executed her Consent to Join form, attached hereto as **Exhibit A**.

20. Defendant is a Washington corporation with its principal office located at 6800 Cintas Boulevard, Mason, OH 45040.

21. Defendant's registered office for service is Corporation Service Company, 1160 Dublin Road, Suite 400, Columbus, OH 43215.

**GENERAL ALLEGATIONS**

22. Throughout their employment with Defendant, Plaintiff and the other CSRs were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

23. Defendant employs thousands of CSRs, providing customer service and support to Defendant's customers throughout the United States.

24. Defendant compensated its CSRs on an hourly basis and classified them as non-exempt employees under the FLSA.

25. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each CSR, including but not limited to: offer letters, paystubs, and/or

other payroll records.

26. Plaintiff and Defendant's CSRs typically worked five (5) days each week and forty (40) or more hours per week.

27. There were many instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

28. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and when returning from their meal breaks; the importance of attendance and schedule expectations; and Defendant's policies.

29. The training that all of Defendant's CSRs received was substantially, if not entirely, the same and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

30. For example, Defendant had very strict key performance indicators (KPI's) that it tracked. This could include, *inter alia*, a number of customers to contact per month. If CSRs did not meet their KPIs, they would receive corrective action or discipline up to and including termination.

31. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

32. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

33. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

34. Defendant issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendant's work expectations, specifically "phone ready" requirements.

35. More specifically, Defendant instructed Plaintiff and other similarly situated CSRs to be "phone ready" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required Defendant's CSRs to load and log into their essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field Defendant's customers' inquiries the moment their shifts began.

36. During the boot-up and login process, Defendant's CSRs frequently experienced technical difficulties or delays, increasing the amount of off-the-clock work they performed that shift.

37. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, and mid-shift work off-the-clock.

38. These policies and procedures, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "phone ready" policy and required CSRs to perform off-the-clock work.

39. Pursuant to these policies and procedures, Defendant's CSRs, including Plaintiff, faced warnings, coaching, poor performance evaluations, performance improvement plans (PIPs), other disciplinary action, and termination for failing to be "phone ready."

40. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

41. Defendant's CSRs also performed off-the-clock work when they returned from their 60-minute lunch periods and prepared themselves to be "phone ready" the moment their meal periods concluded.

42. The pre- and mid-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

43. At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and mid-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with its CSRs.

44. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

45. Defendant knew or should have known that the FLSA requires employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* 43 P.S. § 333.104.

46. Defendant also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than 40 hours in a workweek to be paid overtime at one and one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

47. Nevertheless, Defendant failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

48. Despite knowing Plaintiff and all other CSRs performed this pre- and mid-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

50. Defendant was aware that Plaintiff and the CSRs worked more than 40 hours in multiple workweeks because Defendant's own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendant issued payment.

51. Because Defendant required its CSRs, including Plaintiff, to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A. <u>Unpaid Pre-Shift Boot-Up and Call Ready Work</u>**

52. Defendant's CSRs were trained and required to start up and log into Defendant's computer network and software programs in order to access the information necessary to perform their job duties and be considered "phone ready" *before* "punching into" Defendant's timekeeping system.

53. The pre-shift boot-up and login process generally consisted of the following steps:

a. Turning on or waking up the computer (Windows);

b. Logging into Windows with a username and password;

c. Connecting to Defendant's virtual private network (VPN) using two-factor authentication;

d. Logging in to Defendant's CRM;

e. Logging in to Microsoft Outlook and Teams;

f. Launching Microsoft Excel (to access priority customer tracker);

g. Logging in to Defendant's timekeeping software;

h. Logging in to Defendant's internal phone software and marking "available"

54. The boot-up and login process described above took approximately ten (10) to fifteen (15) minutes per shift.

55. If CSRs arrived immediately prior to their scheduled shifts, they were in danger of discipline for being late because they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and Defendant would consider them tardy.

56. Defendant expected Plaintiff and all other CSRs to respond to customer inquiries and handle calls for the entirety of their scheduled shifts. This expectation, coupled with Defendant's attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and "phone ready" at the start of their shifts.

57. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

58. Despite knowing Plaintiff and all other CSRs perform this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. Unpaid Mid-Shift Off-The-Clock Work**

59. Defendant provided its CSRs one unpaid 60-minute meal period each eight (8) hour shift.

> Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a).

60. Instead of complying with the law, Defendant did not provide CSRs with legitimate bona fide meal periods because it required its CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking live calls the moment their meal periods concluded.

61. CSRs spent approximately five (5) minutes per shift performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which they failed to pay CSRs for work performed during their meal period.

62. The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

63. Defendant's management was aware that Plaintiff and other CSRs performed this off-the-clock work but permitted and even rewarded it through Defendant's schedule adherence metrics.

**FLSA SECTION 216(b) ACTION ALLEGATIONS**

64. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendant at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

65. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

66. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

67. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

68. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

69. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

70. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

71. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CSRs for all straight-time and overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

72. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records.

73. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former CSRs who work or have worked for Defendant anywhere in the United States during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

75. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendant's computer systems and personnel and payroll records.

76. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre- and mid-shift time the Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable;

b. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or resulted in Defendant being unjustly enriched; and

c. The proper measure of damages sustained by the Rule 23 Nationwide Class.

77. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

78. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

79. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

80. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant maintains a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

81. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)

("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

82. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**

83. Plaintiff re-alleges and incorporates all previous paragraphs herein.

84. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

85. Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

86. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

87. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

88. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

89. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

90. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

91. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

92. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over 40 hours per week.

93. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

94. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

95. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

96. Defendant's violations of the FLSA were knowing and willful.

97. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

98. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

99. Plaintiff re-alleges and incorporates all previous paragraphs herein.

100. At all times relevant to this action, Defendant had binding and valid contracts with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

101. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

102. For example, Defendant offered to compensate Plaintiff at a wage certain per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

103. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

104. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

105. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work

described herein.

106. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

107. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

108. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

109. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

110. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

111. Plaintiff re-alleges and incorporates all previous paragraphs herein.

112. This Count is pled in the alternative to Count II *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

113. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

114. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

115. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

116. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

117. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

118. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

119. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

120. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

121. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

122. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An Order designating Plaintiff to act as the representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring that Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendant was unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

h. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: April 3, 2026 Respectfully Submitted,

**BARKAN MEIZLISH DEROSE COX, LLP**

*/s/Robert E. DeRose*
Robert E. DeRose (Ohio Bar No. 0055214)
Anna R. Doren (Ohio Bar No. 0104562)
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: 614-221-4221
Fax: 614-744-2300
Email: bderose@barkanmeizlish.com
adoren@barkanmeizlish.com

-and-

**SOMMERS SCHWARTZ, P.C.**

*/s/Jason J. Thompson*
Jason J. Thompson (P47184)*
Paulina R. Kennedy (P84790)*

One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
Email: jthompson@sommerspc.com
pkennedy@sommerspc.com

**pro hac vice applications forthcoming*

*Attorneys for Plaintiff and the Putative Collective/Class Members*